[No. 11434. Department Two. January 29, 1914.]

CORNER MARKET COMPANY, *Appellant*, v. EUGENE GILLMAN, *Respondent*.[1]

LANDLORD AND TENANT — UNACCEPTED LEASE — TENANCY FROM MONTH TO MONTH—EVIDENCE—SUFFICIENCY. In an action of forcible entry and detainer, findings to the effect that the premises were not held under a written lease, and that the lessee was a tenant from month to month, are sustained where it appears that a former written lease had been made and abrogated by mutual consent before the tenant took possession, that the landlord executed a second lease, containing conditions, which to be binding, required the tenant's formal consent, but was not executed or otherwise consented to by him and was never delivered.

SAME—TENANCY FROM MONTH TO MONTH—NOTICE TO QUIT. A tenant from month to month cannot be ousted by an action of forcible entry and detainer, under Rem. & Bal. Code, § 812, unless notice to quit be served at least twenty days prior to the end of the period.

Appeal from a judgment of the superior court for King county, French, J., entered May 23, 1913, upon findings in favor of the defendant, dismissing an action of forcible entry and detainer, after a trial on the merits to the court. Affirmed.

*D. C. Conover*, for appellant.

*Hammond & Hammond*, for respondent.

[1]Reported in 138 Pac. 2.

FULLERTON, J.—In the early part of the year 1912, the appellant erected a market building at the corner of First avenue and Pike street, in the city of Seattle. While the building was in the course of construction, the respondent entered into a contract with the appellant for a lease of a certain space or stall therein, in which to engage in the sale of fruit, groceries, eggs, and candies. A formal lease was made out purporting to lease to the respondent the premises described for a term of three years, from and after April 1, 1912, at a rental of $250 per month, payable monthly in advance. At the time of the execution of the lease, the respondent paid to the appellant the sum of $500, which the terms of the lease provided should, "in the event of the full and faithful performance of the contract by the said lessee, be credited in payment of the rent for the last two months of said term; but otherwise said payment this day made shall belong to the lessor, as a part consideration to it for the execution of the lease." Prior to the completion of the building,. the parties entered into an agreement by which the lease was abrogated, and an agreement for another lease entered into. By the terms of the agreement, the new lease was to include a greater space than the original one, was to provide for a rental of $362.50 per month, and the respondent was to have the privilege of selling vegetables in addition to the articles he was permitted to sell under the first lease; otherwise, it was to be subject to the same conditions, and run for the same term as the first lease. At the time of the making of this agreement, the respondent paid to the appellant the further sum of $112.50, making the total sum paid on account of the lease $612.50. A new lease was prepared and executed by appellant pursuant to the agreement, but the same was never executed by the respondent, nor, as the respondent testified and the court found, submitted to him for execution, nor did he know of its existence until the time of the trial of the present action.

The building was completed and ready for occupancy on

April 4, 1912, and on that day the respondent entered into possession of the space agreed to be leased to him, paying the rental for the first month in advance. He continued to occupy the premises and pay the rent in advance up to December 1, 1912. In that month, when rent was demanded of him, he directed the appellant to apply on the rent such proportion of the sum as he had deposited with it as would be necessary to pay the rent, and declined to pay the rent otherwise. The appellant thereupon caused to be served upon him a notice to pay the rent or quit and surrender the premises within three days; and on his failure to do either, began the present action, under the statutes of forcible entry and detainer, to oust him from the premises. Issue was taken on the complaint, and a trial had before the court sitting without a jury, which resulted in a dismissal of the action. This appeal followed.

The trial court held that neither of the so-called leases was obligatory upon the respondent; that the first was cancelled and abrogated by the mutual consent of the parties prior to the time it was to go into effect; that the second was not executed by him, and that he never otherwise consented to be bound by its terms and conditions. The court further held that the respondent was a tenant from month to month, with a monthly rent reserved, and that a notice to quit the premises in order to be sufficient upon which to base an action of forcible detainer, must have been served at least twenty days prior to the end of such month, and that no such notice was served.

These conclusions, it seems to us, are the only conclusions that can be justly drawn from the evidence. It is not disputed that the first lease was abrogated by the mutual consent of the parties. It is equally clear that the second was never executed by the respondent, and that he never formally consented to its terms and conditions, although it contained covenants which, to be binding upon him, must have received his formal consent.

It is true, the appellant's witnesses testified that the second lease was prepared prior to the time the respondent entered the premises, and that the respondent was told that he could have the same by calling at the office of the appellant's agent for it. The respondent, however, denied that any such notice was given him, and the court found the facts in accord with his statement. But, if we were to conclude that the weight of the evidence justified a contrary finding, the result would not be different. Failure on the respondent's part to call for the lease cannot be construed as an acceptance of its terms. If the appellant desired that the respondent take the premises on conditions defined in a written instrument, its proper course was to see that the instrument was duly executed by him prior to the time of his entry into the premises. The effect of the act of the parties was, therefore, to create a tenancy from month to month with a monthly rent reserved. Such a tenancy can only be terminated by the landlord by serving upon the tenant a notice to quit the premises at the end of some such period at least twenty days prior thereto. Rem. & Bal. Code, §§ 812, subd. 2 (P. C. 81 § 1397) ; Id., § 8803 (P. C. 295 § 3). As no such notice was given the respondent, he could not be ousted by an action of forcible entry and detainer.

The judgment is affirmed.

CROW, C. J., MOUNT, MORRIS, and PARKER, JJ., concur.