PAULY SCHNITZER, ADMINISTRATRIX OF THE ESTATE OF HASCHER SCHNITZER, PLAINTIFF-APPELLEE, v. JOSEPH LANZARA, DEFENDANT-APPELLANT.

Argued May 8, 1935—Decided July 25, 1935.

Before Justices TRENCHARD, HEHER and PERSKIE.

For the appellant, *Sara V. Dunn.*

For the appellee, *Samuel Yoblonsky* (*Herman L. Fast,* of counsel).

The opinion of the court was delivered by

PERSKIE, J. This appeal brings up for review a judgment of $90 recovered by the plaintiff below against the defendant below in the District Court of the city of Bayonne.

The case was tried by the judge of the court sitting without a jury. Counsel for the respective parties were unable to agree upon the state of case. Thus the trial judge settled and certified the same for this appeal.

The state of case, so certified, discloses that the plaintiff sued the defendant for two months' rent (April and May, 1934) which the plaintiff alleged was due under the written lease with the defendant, dated March 1st, 1934, for the term of one year, at the rental payment of $45 a month. Defendant entered into possession and paid the March rent. The defenses to the suit were that plaintiff, on March 12th, 1934, evicted the defendant from the premises; that plaintiff

took possession thereof and padlocked them; that as a result of the plaintiff's action, the defendant was deprived of the use of the premises for about one and one-half hours.

The plaintiff proved the lease and the defendant's failure to pay the rent. Defendant himself testified that he conducted a butcher shop in the premises in question. That on March 10th, 1934, he *"closed up the store with the intention of giving it up as it did not pay."* That on that day he removed all perishable merchandise from the premises but that the fixtures still remained therein; that on March 12th, 1934, the store was not open for business; that he gave the key to the store to one, Howard Redford, an employe of the Claude-Neon Sign Company, with directions to remove a Neon sign from the premises; that he did not abandon the premises and still retained the key for it; that at no time did he notify the plaintiff that he was vacating the premises. The proof further indicates that while Redford was in the premises about nine-thirty A. M. of March 12th, 1934, dismantling the sign, plaintiff's agent, his son, came in and said that the plaintiff was taking possession of the premises and showed Redford some papers and a badge; the latter left the premises whereupon the son posted a paper on the door and padlocked the premises. The posting of the paper on the door and the padlocking of the premises were corroborated. It further appears that Peter Karrelick, another employe of the defendant, came to the premises to ascertain why Redford had been put out and the premises padlock. After some discussion with the son the padlock was removed between ten-thirty A. M. and eleven A. M. of the same day, March 12th, 1934. The son testified for the plaintiff that he was his father's agent; that he flashed no badge and that the paper posted on the door, which was not produced, Karrelick claimed that the son took it away, was a mere notice for them to come to see the plaintiff; that the only reason the premises were padlocked, for the short time already stated, was because plaintiff thought that the fixtures were being removed by Redford without authority and to protect the contents from being stolen; that when Redford and Karrelick returned the

padlock was removed and defendant's representatives were permitted to enter the premises.

Under this posture of the proof it was open to the trial judge, sitting without a jury, to find as he did (*Dolton* v. *Sickel*, 66 *N. J. L.* 492; *Albrecht* v. *Thieme*, 97 *Id.* 103; *affirmed*, 98 *Id.* 249; *Bigboro Realty Corp.* v. *Cole*, 12 *N. J. Mis. R.* 162), that defendant intended to and did in fact abandon the premises on March 10th, 1934; that there had been no surrender by the tenant and acceptance thereof by the landlord so as to relieve the tenant of his obligation to pay rent; that there was no eviction or taking possession of the premises to terminate the tenancy which would, in contemplation of law, constitute an eviction; that the defendant had failed to carry the burden of proving an eviction.

Appellant, however, writes four specification of determinations with which he is dissatisfied in point of law. They are as follows: (1) At the close of the plaintiff's case, the appellant's attorney moved for a direction of the verdict but the trial court erroneously denied the motion. An exception was asked for and granted by the court. (2) The trial court erroneously refused to find as a matter of law, that there had been an eviction by the plaintiff, thereby suspending the rent demanded by the plaintiff. (3) There was no basis in fact for the finding by the court that there had been no eviction. (4) As a matter of law the eviction by the plaintiff of the defendant suspended the payment of the rent claimed in the state of demand.

We are met, *in limine*, with the contention that appellant raised no objection at any time during the trial; no legal questions were presented to the court below for its ruling; that therefore there is nothing for this court to consider. The meager record submitted does not disclose objections or motions, if any, made during the trial. The state of case, as certified by the trial judge, does, however, disclose the defenses raised and the court's consideration and disposition thereof. It is well settled that, under chapter 62 (*Pamph. L.* 1916, *p.* 109), applicable to District Courts, a party aggrieved by a judgment awarded by a court in a cause tried

without a jury, as here, may review any errors made by the court in giving final judgment without a request for a specific finding of law or fact, or law and fact, and objection to an adverse finding, provided such errors shall be specified in the grounds of appeal filed and served. We think that the alleged erroneous disposition of the case by the trial judge is sufficiently embodied within the herein filed specification of determinations; it is presumed that they were properly served. *Smith* v. *Cruse,* 101 *N. J. L.* 82; *Grimm* v. *Langenfeld,* 10 *N. J. Mis. R.* 1267; 163 *Atl. Rep.* 150.

This court, of course, does not review findings upon questions of fact beyond inquiry whether there was any legal evidence upon which the findings may be based. *Portley* v. *Hudson and Manhattan Railroad Co.,* 111 *N. J. L.* 204, 205; *affirmed,* 113 *Id.* 13; 168 *Atl. Rep.* 184; *affirmed,* 172 *Id.* 384.

Did the trial judge, however, correctly apply the law applicable to the facts as found by him? We think that he did.

There surely was no surrender of the premises. For "a surrender by act and operation of law arises only when the minds of the parties to a lease concur in the common intent of relinquishing the relation of landlord and tenant and the parties execute that intent by acts which are tantamount to a stipulation to put an end to the lease. *Meeker* v. *Spalsbury,* 66 *N. J. L.* 60; *Miller* v. *Dennis,* 68 *Id.* 320; *Ellveeay Newspaper Workers' Building and Loan Association* v. *Wagner Market Co.,* 110 *Id.* 577, 579; *affirmed,* 112 *Id.* 88; 166 *Atl. Rep.* 332; *affirmed,* 169 *Id.* 692.

Nor was there an eviction which would operate to suspend the payment of rent under the lease. An eviction has been defined as "an act of a permanent character done by the landlord in order to deprive, and which has the effect of depriving, the tenant of the use of the thing demised, or a part of it." *Upton* v. *Townsend,* 17 *C. B.* 30; *Morris* v. *Kettle,* 57 *N. J. L.* 218; *Meeker* v. *Spalsbury, supra; Albrecht* v. *Thieme, supra.* A mere trespass is not sufficient. *Meeker* v. *Spalsbury, supra.* And the eviction in order to suspend the rent

must be effected before the rent becomes due, and that "if the acts proven amount to a clear indication of intention on the landlord's part that the tenant shall no longer continue to hold the premises, they will constitute an eviction." *Hunter* v. *Reiley,* 43 *Id.* 480; *Weisberger* v. *Bratter,* 110 *Id.* 231, 233.

To constitute an abandonment of the premises means "an absolute relinquishment" of the premises by the tenant. It is "made up of two elements, act and intention." 1 *C. J.* 5, 6. In *Clinton Amusement and Imp. Co.* v. *Dranow,* 88 *N. J. L.* 701, it appeared, *inter alia,* that defendant's representative said that he was going to remove all the scenery and "he was through with the place." The Court of Errors and Appeals held that these proofs constituted an abandonment and not a surrender of the premises.

We think that the proofs fully support the judgment reached by the trial judge; we so hold.

Judgment is affirmed, with costs.