IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the matter of the Estate of:<br><br>BARBARA COLLEEN RICHTER<br><br>                      Deceased.<br>_____<br><br>NEVILLE W. RICHTER, an individual<br><br>                      Appellant,<br><br>        v.<br><br>DEBORAH C. TURK, as Personal Representative of the Estate of Barbara C. Richter; TAYLOR TURK, an individual; TALUS TURK, an individual; SEATTLE CHILDREN'S HOSPITAL FOUNDATION, a Washington non-profit corporation; and RONALD MCDONAL HOUSE CHARITITES OF WESTERN WASHINGTON & ALASKA, a Washington non-profit corporation,<br><br>                      Respondents. | No. 87500-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BUI, J. — Neville Richter appeals from the trial court's dismissal of his Trust and Estate Dispute Resolution Act (TEDRA), ch 11.96A RCW, petition claiming a homestead interest in real property he co-owned with his late wife Barbara Richter. Richter asserts the trial court erred by finding that he had

abandoned his homestead interest by moving to England to attend school.

Finding no error, we affirm.

Factual Background

Neville and Barbara Richter married in 1976. Barbara[1] had one child, Deborah Turk, from a previous relationship. In 1978, Richter and Barbara purchased a home located in Bellevue, Washington.

On March 9, 2021, Barbara filed a petition for dissolution of her marriage to Neville. Barbara died on August 28, 2021, at the age of 74. At bench trial, the parties stipulated that the dissolution was not finalized before Barbara's death.

Barbara's will was probated in September 2021, and Turk was appointed personal representative of her estate per the terms of the will. The will explicitly states, "I have intentionally and knowingly made no provision in this Will for my spouse NEVILLE WILKES RICHTER and I specifically exclude him from this Will." Barbara's will directed that her property be distributed 75 percent to Turk, 11 percent to her grandchild Taylor Turk, 11 percent to her grandchild Talus Turk, and one percent each to three separate charities.

In October 2022, Richter left Washington to pursue an art education in London, England. He did not return to the United States except to attend the trial in this matter, more than 21 months later. Since leaving the United States, Richter leased the Bellevue residence through a real estate company to a personal acquaintance on a long-term lease.

---

[1] Because Neville and Barbara share a last name, we refer to Barbara by her first name to avoid confusion. We mean no disrespect.

On February 24, 2023, Richter filed a TEDRA petition demanding a surviving spouse award pursuant to chapter 11.54 RCW equivalent to the alleged value of his homestead right in the Bellevue property. As the alleged value of the homestead right exceeded the value of equity in the home, Richter requested that he be awarded 100 percent of the Bellevue property. Turk filed an answer denying that Richter had any homestead right in the Bellevue property and requesting relief be denied.

The court conducted a bench trial from July 16 to July 18, 2024. Richter and Turk both testified at trial. Richter testified that he was currently living in a high-rise apartment in London and did not intend to return to the United States until 2025. Richter further testified that he planned to sell the Bellevue property in a few years and that the equity in the home was part of his retirement plan. When asked about the mortgage remaining on the property, Richter testified, "I'll say it's around [$]300,000. I don't look at that figure all the time. It's an automatic withdrawal from my account." Richter also testified that his mortgage "I believe, is about [$]4,200 a month."

Following trial, the trial court entered written findings of fact and conclusions of law. The trial court found "Richter failed to provide any convincing evidence to establish his claim of homestead" and that "Richter simply views the Bellevue property as a mere reservoir of value to him." The court also found

> Richter did not attempt to provide any evidence of concern for the Bellevue property as a future residence. He failed to demonstrate any knowledge or concern for mortgage payments, property maintenance, repair and upkeep expenses, or written lease terms and conditions for a home Petitioner Richter is providing to a person only identified by him as an acquaintance.

3

The court noted that "Richter admitted he viewed the home he used to live in as a retirement asset." The trial court further found that because Richter has a place to live in England, "[t]he failure of his homestead claim seems to create no risk of him being homeless in any emergent fashion."[2]

Based on its findings and conclusions, the trial court dismissed Richter's TEDRA petition with prejudice and awarded attorney fees to Turk.

Richter timely appeals.

ANALYSIS

1. Standard of Review

Richter asserts that the trial court erred by dismissing his TEDRA petition for an award equivalent to a homestead. Richter contends that this court should apply a de novo standard of review because his appeal concerns the application of a statute to undisputed facts. Turk, on the other hand, contends that the court should apply an abuse of discretion standard of review. Neither party is entirely correct.

Richter's TEDRA petition asserted a claim under chapter 11.54 RCW. Former RCW 11.54.010(1) (2008)[3] states,

> Subject to RCW 11.54.030, the surviving spouse or surviving domestic partner of a decedent may petition the court for an award from the property of the decedent. If the decedent is survived by children of the decedent who are not also the children of the

---

[2] Richter also maintains a community property interest in the Bellevue property, as it was purchased during his marriage to Barbara. RCW 26.16.030. Richter's petition sought an award from Barbara's share of the community property.

[3] RCW 11.54.010 was revised significantly, effective August 1, 2024. As proceedings were commenced prior to that date, we apply the prior version of the statute. See LAWS OF 2024, ch. 20 § 15 ("No act done in any proceeding commenced before the effective date of this section and no accrued right shall be impaired by any provision of this act.").

4

surviving spouse or surviving domestic partner, on petition of such a child the court may divide the award between the surviving spouse or surviving domestic partner and all or any of such children as it deems appropriate. If there is not a surviving spouse or surviving domestic partner, the minor children of the decedent may petition for an award.

We review issues of statutory interpretation de novo. Crossroads Mgmt., LLC v. Ridgway, 2 Wn.3d 528, 538, 540 P.3d 82 (2023).

Former RCW 11.54.020 further states "The amount of the basic award shall be the amount specified in RCW 6.13.030(2) with regard to lands." RCW 6.13.030(2) was amended and recodified as RCW 6.13.030(1) in 2021. LAWS OF 2021, ch. 290 § 3. This statute now reads, in relevant part, "The homestead exemption amount is the greater of: (a) $125,000; [or] (b) The county median sale price of a single-family home in the preceding calendar year[.]" RCW 6.13.030(1). Because an award under former RCW 11.54.010 is calculated under the homestead act, the award has historically been characterized as an "award in lieu of homestead."[4] In re Est. of Hein, 17 Wn. App. 2d 243, 245, 485 P.3d 953 (2021).

A homestead consists of real or personal property that the owner, or dependent of the owner, uses as a residence. RCW 6.13.010(1). Ordinarily, the legal right to a homestead is automatic "from and after the time the real or

---

[4] An award in lieu of homestead differs from a "true" homestead in that a "true" homestead renders the home "exempt from attachment and from execution or forced sale" and attaches automatically once it is occupied as a principal residence. RCW 6.13.040(1), .070(1). An award in lieu of homestead, however, constitutes an award of property to the surviving spouse from the decedent's estate and requires the spouse to " 'compl[y] with all the conditions contained in the statutes authorizing the grant.' " In re Est. of Lindsay, 91 Wn. App. 944, 950, 957 P.2d 818 (1998) (quoting In re Est. of Pesterkoff, 37 Wn. App. 418, 421, 680 P.2d 1062 (1984)).

personal property is occupied as a principal residence by the owner." RCW 6.13.040(1). However, a homestead right, as well as the right to an award in lieu of homestead, may be abandoned. In re Est. of Lindsay, 91 Wn. App. 944, 950, 957 P.2d 818 (1998). RCW 6.13.050 states:

> A homestead is presumed abandoned if the owner vacates the property for a continuous period of at least six months. However, if an owner is going to be absent from the homestead for more than six months but does not intend to abandon the homestead, and has no other principal residence, the owner may execute and acknowledge, in the same manner as a grant of real property is acknowledged, a declaration of nonabandonment of homestead and file the declaration for record in the office of the recording officer of the county in which the property is situated.

"Abandonment of a legal right is generally a question of fact." In re Tr. Sale of Real Prop. of Brown, 161 Wn. App. 412, 415, 250 P.3d 134 (2011) (citing Moore v. Nw. Fabricators, Inc., 51 Wn.2d 26, 27, 314 P.2d 941 (1957)). "This court reviews findings of fact for supporting substantial evidence." Brown, 161 Wn. App. at 415 (citing Fred Hutchinson Cancer Research Ctr. v. Holman, 107 Wn.2d 693, 712, 732 P.2d 974 (1987)).

In analyzing Richter's appeal, we apply each standard of review where appropriate.

2.  Whether the Presumption of Abandonment Applies

Richter asserts that the trial court erred by applying a legal presumption that he abandoned the Bellevue property. As previously noted, RCW 6.13.050(1) states, "A homestead is presumed abandoned if the owner vacates the property for a continuous period of at least six months." It is undisputed that Richter

relocated to England[5] in 2022 and did not return to the United States except to attend trial almost two years later. By operation of RCW 6.13.050, Richter was presumed to have abandoned his homestead after absenting himself from the United States for more than six months.

Richter claims that his TEDRA petition, filed less than six months after he left the country, was sufficient to constitute a declaration of nonabandonment and the presumption does not apply. This argument is contrary to the plain language of RCW 6.13.050. Under the statute, a person wishing to avoid application of the presumption of abandonment "may execute and acknowledge . . . a declaration of nonabandonment of homestead and file the declaration for record in the office of the recording officer of the county in which the property is situated." RCW 6.13.050. Richter did not file a declaration of nonabandonment with the King County recorder's office until June 2023, more than six months after he left the country.

Richter also asserts that because RCW 6.13.050 uses the permissive word "may," he was not required to file a declaration of nonabandonment in order to avoid the presumption of abandonment. We construe statutes so as to avoid absurd results. Washington Tr. Bank v. Kozak, 27 Wn. App. 2d 542, 549, 533 P.3d 152 (2023). As the trial court astutely reasoned in its oral ruling, "If [Richter's] interpretation of . . . the statute [is] correct, then the court never has to follow, in this statute, that the legislature has very clearly set forth. It means

---

[5] Relying on RCW 29A.04.151, Richter asserts that "going away to college does not constitute an abandonment" of homestead rights. RCW 29A.04.151 defines what constitutes a "residence" for voting purposes; it has no application here.

nothing." The trial court correctly applied the legal presumption that Richter abandoned the Bellevue property by not filing a declaration of nonabandonment within six months of leaving the United States.

### 3. Whether Richter Rebutted the Presumption of Abandonment

Richter also asserts that substantial evidence does not support the court's findings that he abandoned his homestead right in the Bellevue property.[6] Richter contends that he presented evidence to rebut the presumption of abandonment and the trial erred by determining otherwise. We disagree.

"Substantial evidence is evidence 'sufficient to persuade a rational fair-minded person that the premise is true.' " Brown, 161 Wn. App. at 415 (quoting Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003)). "We view the record in the light most favorable to the party prevailing in superior court, and we do not reweigh evidence." Value Vill. v. Vasquez-Ramirez, 11 Wn. App. 2d 590, 595, 455 P.3d 216 (2019).

The record here demonstrates that the trial court's findings of fact, reflecting that Richter failed to rebut the presumption of abandonment, are supported by substantial evidence. First, the trial court found "[c]lear evidence shows Petitioner Richter simply views the Bellevue property as a mere reservoir of value to him." This finding is supported by Richter's testimony that he intended to sell the property within a few years and that the equity in the property was part of his retirement plan.

---

[6] Turk correctly notes that Richter did not specifically identify any findings of fact in his assignments of error, as required under RAP 10.3(g). However, as the relevant issues are fully briefed, we exercise our discretion to review Richter's challenge to the sufficiency of the evidence on its merits. See RAP 1.2(a).

Second, the trial court found

> Richter did not attempt to provide any evidence of concern for the Bellevue property as a future residence. He failed to demonstrate any knowledge or concern for mortgage payments, property maintenance, repair and upkeep expenses, or written lease terms and conditions for a home Petitioner Richter is providing to a person only identified by him as an acquaintance.

This finding is supported by Richter's testimony that he could not say for certain how much was still owing on his mortgage, only that it was "around [$]300,000" and that his monthly payment "I believe, is about [$]4,200 a month." Richter also testified that the Bellevue property was "leased through a real estate company." As the trial court noted in its oral ruling, Richter presented no evidence of maintenance records, tax payments, or a written lease. In the court's view, this reflected "a rather lackadaisical approach to [the property's] upkeep as a residence." The court was also concerned about the lack of evidence given that "leases of personal residences, especially one as substantially furnished with a party's personal property, regularly contains a clause regarding the homeowner's return to the property and how much notice the lessee has to vacate so that the owner can recommence habitation."

In his briefing, Richter views the evidence in the light most favorable to him, rather than in the light most favorable to the verdict, as substantial evidence review requires. Value Vill., 11 Wn. App. 2d at 595. Richter also repeatedly takes issue with the trial court's credibility determinations, claiming they were "unsupported by the record." But credibility determinations are solely for the trier of fact and cannot be reviewed on appeal. Morse v. Antonellis, 149 Wn.2d 572, 574, 70 P.3d 125 (2003). Accepting the trial court's credibility determinations and

9

viewing the evidence in the light most favorable to the verdict, the evidence supports the trial court's findings that Richter failed to rebut the presumption of abandonment.

### 4. Attorney Fees on Appeal

Both parties request an award of attorney fees on appeal under RAP 18.1 and RCW 11.96A.150.[7] RAP 18.1 allows us to award reasonable attorney fees or expenses "[i]f applicable law grants to a party the right to recover" such attorney fees or expenses. RCW 11.96A.150(1) states, in relevant part, "Either the superior court or any court on an appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party . . . . The court may order the costs, including reasonable attorneys' fees, to be paid in such amount and in such manner as the court determines to be equitable." Because Turk does not explain why it would be equitable to award her fees, we decline to do so. And because Richter is not the prevailing party, we deny his request for fees.

Because Richter did not file a declaration of nonabandonment with the King County recorder's office within six months of leaving the United States, the law presumes that Richter abandoned his homestead. The evidence presented at trial supports the trial court's finding that Richter failed to rebut that presumption.

Affirmed.

---

[7] Richter also asserts, "If this Court reverses the trial court's decision, it should also reverse the award of attorneys' fees and costs." Because we affirm the trial court's decision, we do not review its award of attorney fees and costs.

WE CONCUR:

_____, ACJ